IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Doris Ann Young, | § | Case No.  06-80534 |
|    Debtor. | § | |

## MEMORANDUM OPINION

Doris Ann Young filed the bankruptcy petition that commenced this case on December 4, 2006.  On December 7, 2006, Chris Di Ferrante filed his Motion for Modification of Automatic Stay to Act Against Real Property In Rem and to Proceed with Pending State Court Litigation [doc. no. 6].  On December 23, 2006, Doris Ann Young filed her Emergency Motion to Extend the Automatic Stay [doc. no. 26].   For the reasons set forth below, the Court (1) denies the motion to extend the automatic stay, (2) grants the motion for stay relief based on Ms. Young's participation in a scheme to hinder, delay and defraud Mr. Di Ferrante, and (3) conditionally denies the motion for stay relief to the extent it is based on a lack of adequate protection.

### Background

This case is intertwined with seven other bankruptcy cases previously filed in the United States Bankruptcy Court for the Southern District of Texas.  To understand the relationship of those cases, the Court briefly reviews the relationships of the parties and the related bankruptcy filings.

**The Players**

Doris Ann Young is married to Donald Lee Young.  Mr. and Ms. Young have an adult daughter, Donna Holcomb.  Ms. Holcomb and her husband own a corporation named Two Story Enterprises, Inc.

Mr. Di Ferrante is a Texas attorney.  At one time, he was Donald Young's attorney.
There was a fee dispute between Mr. Young and Mr. Di Ferrante.

**The Real Estate**

In 1964, Mr. and Ms. Young bought a home on two lots (lots 24 and 25 of Block 4, West
Kemah Subdivision, Section 1, Volume 254-A Page 52, Galveston County, Texas) in Kemah,
Texas.  In 1967, Mr. and Ms. Young acquired the adjacent lot (lot 26 in the same subdivision).

In September 2002, Mr. and Ms. Young transferred lot 26 to Two Story Enterprises.  A
third party lender advanced $20,000 to Two Story Enterprises.  The advance was secured by lot
26 and by certain other collateral not relevant to the present dispute.  None of the advanced funds
were used to pay Mr. Di Ferrante.   In November 2003, lot 26 was reconveyed by Two Story
Enterprises to Mr. and Mrs. Young.

Mr. Di Ferrante sued the lender, Two Story Enterprises and Mr. Young generally alleging
that the loan arrangement was fraudulently arranged to avoid Mr. Young's debt to Mr. Di
Ferrante.  During the course of the suit, the third party lender assigned the debt from Two Story
Enterprises to Mr. Di Ferrante.  Accordingly, Mr. Di Ferrante now holds the debt that is secured
by a lien on lot 26.

**Litigation**

Substantial litigation ensued in the state court system.  Although the precise details are
not relevant, two events are of importance to this litigation.  First, the state court held that the
defendants had failed to comply with court orders and struck their answers.  Among other things,
the state court found that Doris Young failed to produce documents to Mr. Di Ferrante, that she
was intentionally evasive in responding to questions, that she refused to testify about non-
privileged matters, and had failed to pay court ordered sanctions.  Similar findings were made

2

against Donald Young, Donna Holcomb and Two Story Enterprises.  Moreover, the state court found that Two Story Enterprises, Donald Young, Doris Young and Donna Holcomb "were operating as a single financial unit in this litigation."  Second, the state court issued a partial summary judgment in favor of Mr. Di Ferrante.  That partial summary judgment was severed from the balance of the state court litigation.

**Previous Bankruptcy Petitions**

On April 29, 2003, Donald Lee Young filed a chapter 13 bankruptcy petition (case 03-36052).  That case was dismissed on October 8, 2003.  On June 2, 2003, Donna Holcomb filed a chapter 13 bankruptcy petition (case 03-80657).  That case was dismissed on October 7, 2003.[1] On June 2, 2003, Two Story Enterprises, Inc. filed a chapter 11 bankruptcy petition (case 03-38300).  That case was dismissed on June 23, 2003.  On September 6, 2005, Two Story Enterprises, Inc. filed a second chapter 11 bankruptcy petition (case 05-44312).  That case was dismissed on October 27, 2005.  On October 16, 2005, Donald Lee Young filed a second chapter 13 bankruptcy petition (case 05-94375).  That case was dismissed on July 14, 2006.  On October 3, 2006, Doris Ann Young filed a chapter 7 bankruptcy petition (case 06-80397).  That case was dismissed on November 20, 2006.  The petition in the present case was filed December 4, 2006.

Accordingly, this is the seventh bankruptcy petition filed since April 2003 filed by Doris Young, Donald Young, Donna Holcomb or a company controlled by them.  Of those seven petitions, six debtors claimed an interest in lot 26.  Each of those six petitions was filed to stop a state law foreclosure of lot 26.

The bankruptcy cases filed in the United State Bankruptcy Court for the Southern District of Texas have not been properly prosecuted.  The first case filed by Two Story Enterprises was

---

[1] Ms. Holcomb's bankruptcy case is listed for the purposes of completeness.  It was not directly related to the matters presently before the Court.

dismissed because the corporation was not represented by counsel.  A corporation must be represented by counsel to prosecute a chapter 11 bankruptcy case.  Undeterred, Two Story Enterprises filed its second bankruptcy case, also without representation of counsel.

Donald Young's first bankruptcy case was dismissed after he failed to make payments to the chapter 13 trustee.  His second case was dismissed with prejudice against refiling after he failed to comply with this Court's orders.  Moreover, during this second case, Doris Ann Young was held in civil contempt by this Court when she failed to comply with a discovery order.  The Court imposed daily, coercive sanctions against Ms. Young.  Notwithstanding the daily sanctions, Ms. Young continued to fail to comply with the Court's orders.

Doris Young's first bankruptcy case was dismissed when she failed to file a creditor's list for notice purposes.  The filing of the creditor list is required by statute.  Additionally, the Court issued an order directing that the list be filed and set a deadline for compliance.  Ms. Young failed to comply with the statue or this Court's order.

## Jurisdiction

This Court has jurisdiction over these motions pursuant to 28 U.S.C. § 1334.  These are core matters pursuant to 28 U.S.C. § 157.  These motions are filed under Title 11 of the United States Code.  The United States District Court's standing order of reference refers these matters to the bankruptcy judges for this district.

## Motion to Extend Stay

Doris Young moves for an extension of the automatic stay.

Section 362(c)(3) of the Bankruptcy Code provides that the automatic stay "with respect to any action taken with respect to a debt or property securing such debt … shall terminate on the 30th day after the filing" of a new bankruptcy case if a previous bankruptcy case was dismissed

within the one-year period prior to the filing of the new bankruptcy petition.   11 U.S.C. § 362(c)(3).

Ms. Young's first bankruptcy case was dismissed on November 20, 2006.   The present case was filed two weeks later.   Section 362(c)(3) applies.

Although the automatic stay normally terminates after 30 days, the debtor may seek to extend the automatic stay if she can demonstrate that the "filing of the later case is in good faith as to the creditor to be stayed."   11 U.S.C. § 362(c)(3)(B).

**Legal Standard**

On October 6, 2006, Mr. Di Ferrante filed a motion for relief from the automatic stay in Ms. Young's first bankruptcy case.   Section 362(c)(3)(C)(ii) provides that Ms. Young's burden on her motion to extend the stay must be met by clear and convincing evidence.   "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir.2004).   This Court has adopted the *Shafer* standard as it applies to motions filed under § 362(c)(3).   *In re Collins,* 335 B.R. 646, 652 (Bankr. S.D. Tex 2005).

 This Court has previously set forth the factors that will be considered in a motion to extend the stay under § 362(c)(3).   *In re Charles (Charles II)*, 334 B.R. 207, 219-23 (Bankr. S.D. Tex.2005).

As set forth in *Charles II,*  the Fifth Circuit utilizes a "totality of the circumstances" test for good faith that "exacts an examination of all the facts in order to determine the bona fides of the debtor."   *In re Chafin,* 816 F.2d 1070, 1074 (5th Cir. 1987).   A debtor must meet both an

objective and a subjective good faith test. *Charles II* at 218. If both tests are satisfied, the Court may exercise its discretion to extend the stay.

On December 29, 2006, the Court commenced a hearing at approximately 9:45 a.m. The hearing concluded at approximately 8:50 p.m. Ms. Young testified at length and called several witnesses on her behalf. By the conclusion of the lengthy hearing, Ms. Young was unable to articulate any basis for leaving the automatic stay in place other than to forestall the state law foreclosure by Mr. Di Ferrante.

Perhaps more importantly, Ms. Young has failed to persuade the Court by clear and convincing evidence that the filing of this case "is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). Put simply, the Young family shenanigans have come home to roost. The statute requires the Court to focus on Ms. Young's conduct vis-à-vis Mr. Di Ferrante.[2]

**Objective Good Faith**

With respect to objective good faith, the test in a chapter 7 case is whether Ms. Young is likely to receive a discharge in this chapter 7 case. The burden of proof is on Ms. Young. C*harles II*, 334 B.R. at 214. At the conclusion of the December 29, 2006 hearing, the Court was not persuaded "by evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case" that Ms. Young would receive a chapter 7 discharge. To be eligible to receive a chapter 7 discharge, Ms. Young must obey all lawful court orders. 11 U.S.C. § 727(a)(6). As set forth above, Ms. Young has previously—without good explanation—refused to obey orders issued by this Court and by the state court. Although she had ample opportunity to explain her conduct at

---

[2] The Court expresses no view on Mr. Di Ferrante's conduct. The statute requires an analysis of Ms. Young's good faith—not of Mr. Di Ferrante's.

the December 29, 2006 hearing, Ms. Young failed to offer any credible explanation for her refusal to comply with court orders.  Ms. Young failed to prove objective good faith.

Ms. Young testified that she would comply with this Court's orders in this case. Although that testimony was necessary, it was neither credible nor sufficient.  Her conduct in prior dealings with Mr. Di Ferrante speaks volumes.  In state court, she has failed to produce discovery to Mr. Di Ferrante and failed to respond forthrightly to deposition questions.  She has failed to pay sanctions imposed by the state court.  In this Court, she has failed to produce documents required by this Court and failed to pay sanctions imposed by this Court.  In her prior case, Ms. Young failed to comply with the Court's order to file a list of her creditors with the Court.

**Subjective Good Faith**

The Court also finds that Ms. Young failed to prove her subjective good faith by a clear and convincing standard.  The Court has established 6 factors that will be examined to determine subjective good faith.  *Id.* at 219.

First, the nature of Ms. Young's debt must be considered.  In this case, the dominant debt that she wishes to discharge is the debt to Mr. Di Ferrante that is secured by lot 26.  However, Ms. Young also has an unknown amount of debt to the United States for federal income taxes. Although she was running a small business in Baytown, Texas, Ms. Young has not filed her federal income tax returns for the past five years.  No reason was offered for her failure to file the returns.  Taken as a whole, this issue tends to show that the case has not been filed in good faith as to the creditors to be stayed.

Second, the nature of the collateral must be considered.  The collateral is ancillary to Ms. Young's home.  It is not a necessity.  However, it is also not the type of collateral that is

considered a luxury item.  It is a vacant piece of land originally purchased 40 years ago.  This issue tends to show that the case was filed in good faith.

Third, eve of bankruptcy purchases must be considered.  Ms. Young has made no untoward eve of bankruptcy purchases.  This factor tends to show that the case has been filed in good faith as to the creditors to be stayed.

Fourth, the debtor's conduct in the present case must be considered.  Ms. Young has filed all appropriate papers in this case.  She attended the one scheduled hearing.  Her conduct in this case tends to show that the case has been filed in good faith as to the creditors to be stayed.

Fifth, the reasons why Ms. Young wishes to extend the stay must be considered.  As set forth in detail below, the purpose of this bankruptcy case is to further impair Mr. Di Ferrante's ability to exercise his state law foreclosure rights.  This bankruptcy case is a continuation of a scheme organized by Ms. Holcomb.  This is a chapter 7 bankruptcy case.  Ms. Young claims that lot 26 is exempt property.  If she is correct, then the property will no longer be property of the estate after the expiration of 30 days from the conclusion of the § 341 meeting of creditors.  FED. R. BANKR. P. 4003; 11 U.S.C. § 522(l).  The filing of the bankruptcy petition will not achieve any long-term goal—it only delays.  This factor tends to show that the case has not been filed in good faith as to the creditors to be stayed.

Sixth, the Court must consider other circumstances that weigh on the wisdom of the extension.  Ms. Young lives on a modest social security check.  The lot in issue is adjacent to her home, and may comprise a part of her homestead.  She bought the lot in 1967 and (except for the brief time that the lot was owned by Two Story Enterprises) has owned the lot since that time. There is no question that Ms. Young sincerely believes that Mr. Di Ferrante is trying to steal her land. Nevertheless, some of her general conduct is not helpful to her case.  The schedules filed in

this case appear to contain material inaccuracies with respect to property taxes due on her Baytown property. Ms. Young has allowed her home to deteriorate to the point that it has been condemned by the City of Kemah. Pictures introduced at the hearing and the City's condemnation report reflect that Ms. Young's home is both dangerous and an eyesore to the community.

On the totality of the circumstances, Ms. Young has failed to demonstrate that this case was filed in subjective good faith.

The Court cannot find by clear and convincing evidence that the automatic stay should be extended in this case. The automatic stay will "terminate with respect to the debtor on the 30th day after the filing" of this case. 11 U.S.C. § 362(c)(3)(A).

### Termination of Stay for Cause

Although the Court declines to extend the stay, that does not end the inquiry. Mr. Di Ferrante has scheduled a foreclosure sale for January 2, 2007. The automatic stay will not terminate on its own terms until January 3, 2007. Accordingly, the Court must determine whether the stay should terminate for cause.

Mr. Di Ferrante argues that the automatic stay should terminate because (i) the debtor does not have any equity in such property; and (ii) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

There is no question that the property is not necessary to an effective reorganization. This is a chapter 7 liquidating bankruptcy. It is not a reorganization bankruptcy. Accordingly, this prong of the § 362(d)(2) test is satisfied as a matter of law. *See, e.g., B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 258 (Bankr. S.D.N.Y. 1999).

Even if not satisfied as a matter of law, the Court finds that the property is not necessary to Ms. Young.  There are two structures on the Kemah land.  The two structures are located on lots 24 and 25.  The structures are accessible without the use of lot 26.  Lot 26 is a vacant, adjacent lot.  It is not necessary for Ms. Young to retain the lot in order to continue to live on the Kemah property.

The issue of whether the debtor has equity in the property turns on the question of whether Mr. Di Ferrante is entitled to collect legal fees for his work on collecting the debt secured by lot 26.  To be sure, an attorney in Texas who represents himself may recover attorneys fees.  *See, e.g., Pullman v. Brill, Brooks, Powell & Yount*, 766 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist. 1988, no writ).  The promissory note signed by Two Story Enterprises that is secured by lot 26 has the following provision with respect to attorneys fees:

> If this Note or any instrument securing or collateral to it is given to any attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorney's fees and court costs, in addition to other amounts due.  Reasonable attorney's fees shall be ten percent (10%) of all amounts due unless either party pleads otherwise.

The Court fails to understand why interpretation of the foregoing paragraph presents a difficult question.  Ten percent of all amounts due is the presumptive amount of attorneys fees.  Either side can plead otherwise.  If the defendants plead that the amount should be less than 10%, the burden is on the defendants.  If the plaintiff pleads that the amount should be more than 10%, the burden is on the plaintiff.  In this case, Mr. Di Ferrante has plead that the reasonable amount of the attorneys fees should exceed 10%.  The burden is on him to prove the reasonableness of his claimed fee.

However, this Court need not determine the precise amount of allowed attorneys fees. The issue for the Court is only whether Ms. Young has equity in lot 26.  The Court begins with an analysis of the value of lot 26.

Lot 26 has not been marketed for sale as a separate parcel.  In 2004, the Youngs listed lots 24, 25 and 26 (along with the structures in place on lots 24 and 25) for sale with a real estate broker at a listing price of $195,000.  Only one offer was received, and it was not a bona fide offer.  In 2006, the Youngs received an offer of $130,000 for the sale of the entire property.  Ms. Young has not accepted the offer.  Lots 25 and 26 have two structures.  One of the structures has been condemned by the City of Kemah.  The other is a smaller structure in which the Youngs reside.

The property is listed on the 2006 tax rolls with a value of $97,400.  On the 2006 tax roll, the improvements are valued at $32,150.  From the Court's review of the photographs of the property under condemnation, the Court concludes that excess value is properly attributable to the land rather than to the dilapidating improvements.  Taken as a whole, the Court concludes that the real estate has a value of $130,000 and that the improvements have a value of $32,150. The Court estimates that lot 26 has a value of $32,500.

Although there is a minor dispute regarding the amount of principal and interest owed on the loan that is secured by lot 26, the Court estimates that $16,504.72 is owed in principal and interest.  This estimate is derived from the July 13, 2006 partial summary judgment issued by the state court (setting the principal and interest owing at $15,235).  The note provides for post default interest of 18%.  Accordingly, the $16,504.72 is the amount that would be owed if 18% interest were added to the amount reflected in the state court's partial summary judgment, with the 18% accruing for the 169 days between the date of the partial summary judgment and

December 29, 2006.  The Court recognizes that Ms. Young challenges the finality of the state court's partial summary judgment.  However, she offers no credible evidence reflecting that an alternative amount was due.  Moreover, this Court must estimate claims in order to avoid undue delay.  11 U.S.C. § 502(c).

Given a value of $32,500 and a principal and interest claim of $16,504.72, the issue for the purposes of § 362(d)(2) is whether attorneys fees on the note exceed $15,995.28.  The sole witness on this issue was Mr. Di Ferrante who testified that reasonable attorneys fees exceeded $105,000.  The Court has reviewed the number of bankruptcy cases in which Mr. Di Ferrante has been required to litigate and has reviewed the state court litigation.  It is beyond peradventure that Mr. Di Ferrante's reasonable fees exceed $20,000.  Accordingly, Ms. Young has no equity in lot 26.

When a creditor, like Mr. Di Ferrante, is undersecured, the creditor  is entitled to protection against any diminishment in the value of its collateral. *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.,* 108 S.Ct. 626, 630 (1988)*.*  After considering the evidence, the Court concludes (i) that there is a substantial risk that the collateral will decline in value; and (ii) that Ms. Young has offered adequate protection against that decline in value.

As set forth above, lot 26 is a vacant lot.  However, when the City of Kemah condemned the home on lots 24 and 25, it notified the Youngs that their property would be charged with the cost of any corrective action on the property.  Although the Youngs have begun to remediate some of the problems listed in the condemnation notice, the Youngs do not have the financial resources to make all required repairs to the home.  Ms. Young testified that she was dependent on others to provide the funds for the necessary repairs.  Moreover, the Youngs have appealed the condemnation order.  To determine the risk to Mr. Di Ferrante, the Court must look at the

Young's past conduct. The Youngs have historically ignored Court orders. This Court sees no reason to believe that the Youngs will attempt full compliance with the City's condemnation order. It further appears that the Youngs do not have the financial ability to comply with the order. The result of noncompliance will be that the cost of repairs to the structure will be charged against the real estate, including lot 26.

At the hearing on December 29, 2006, the Youngs offered to post adequate protection in the amount of $15,600 to protect Mr. Di Ferrante against any future loss on the property. The Court finds that $15,600 is adequate to protect Mr. Di Ferrante against any diminution in value. Accordingly, the Court conditions the continuation of the automatic stay (as to cause under § 362(d)(2) only) on the posting of a $15,600 cash bond on or before 9:30 a.m. on January 2, 2007. If the bond is not posted by that date and time, the foreclosure may proceed. Based on the number of bankruptcy petitions that have been filed on this property and the necessity for adequate protection, the Court finds that the stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) should not apply with respect to the order issued pursuant to this section of the memorandum opinion.

### Repeat Filing and § 362(d)(4)

One of the significant changes to the automatic stay that was adopted effective October 17, 2005, was § 362(d)(4). That section provides as follows:

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either—
>
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.

13

> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. § 362(d)(4).

Mr. Di Ferrante seeks an order granting relief from the stay and imposing the type of *in rem* relief that is contemplated by § 362(d)(4). To prevail, Mr. Di Ferrante must demonstrate that the filing of this petition was part of a scheme to "delay, hinder, and defraud." He must show these three in the conjunctive. *In re Gould,* 348 B.R. 78, 80 (Bankr. D. Mass. 2006). This new provision was adopted to reduce abusive filings. *In re Muhaimin,* 343 B.R. 159, 166 (Bankr. D. Md. 2006).

Accordingly, Mr. Di Ferrante must prove each of the following:

1.    That there was a scheme.

2.    That the scheme involved an attempt to delay a creditor.

3.    That the scheme involved an attempt to hinder a creditor

4.    That the scheme involved an attempt to defraud a creditor.

5.    That the scheme involved either:

    A.    the transfer of all or part ownership in real property without the consent of the secured creditor or court approval; and

    B.    the scheme involved multiple bankruptcy filings affecting the real property at issue.

*Id.* at 168-69.

The Court notes that no published decision grants relief under § 362(d)(4).  In this case, Mr. Di Ferrante has met his burden of proof and the relief will be granted.  However, the Court will not waive the stay imposed by Rule 4001(a)(3) in order to assure that Ms. Young has an adequate opportunity to appeal.

**Was there a scheme?**

The Bankruptcy Code does not define scheme.  The Court will utilize the plain meaning of the term.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (the plain meaning of legislation should be conclusive except in the rare cases where literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters).  When a statutory term is not defined in the statute, the Court must apply its ordinary meaning.  *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).

A "scheme" is "a plan or program of action."  MERRIAM-WEBSTER DICTIONARY 637 (Sidney Landau ed., Trident Press 1998).

As set forth above, the state court has already determined that Two Story Enterprises, Donald Young, Doris Young and Donna Holcomb "were operating as a single financial unit in this litigation."  The Court has considered the testimony by Ms. Holcomb, Ms. Young and Mr. Young.  Based on the totality of that testimony, and the events of the past three years, the Court concludes that these three individuals have engaged in a systematic plan of action.  That plan was orchestrated by Donna Holcomb.  Moreover, this Court agrees with the state court's conclusion that these individuals and Two Story Enterprises operated as a single financial unit.

Because the Court finds that there was an organized effort by Ms. Holcomb, Mr. Young, Ms. Young and Two Story Enterprises, the Court will attribute the conduct of any one actor in determining whether Mr. Di Ferrante has satisfied his burden under § 362(d)(4).

**Delay**

Four of the various bankruptcy petitions were filed within one day of foreclosure sales planned by Mr. Di Ferrante.[3]   The June 2, 2003 bankruptcy petition was filed one day before foreclosure Tuesday in June 2003.  The September 6, 2005 bankruptcy was filed on foreclosure Tuesday in September 2005.  The October 3, 2006 bankruptcy case was filed on foreclosure Tuesday in October 2006.  The December 4, 2006 bankruptcy petition was filed one day before the December 2006 foreclosure Tuesday.

There is no question that part of the scheme was to delay the foreclosure sales.

**Hinder**

The common meaning of the word "hinder" is to "make slow or difficult the progress of" or "to hold back."  *Id.* at 865.  In the context of a Texas real property foreclosure proceeding, the filing of a bankruptcy petition hinders a lien holder's ability to proceed with the state law foreclosure.  Part of the scheme was to hinder Mr. Di Ferrante from exercising his state law remedies.

**Defraud**

To defraud is "to deprive of something by deception or fraud."  *Id.* at 475.  "Fraud" includes "an act of deceiving or misrepresenting".  *Id*. at 729.  "Deception" is the act of deceiving, which includes "to cause to accept as true or valid what is false or invalid."  *Id*. at 466.

The statute does not define the type of fraud that must be proven in order to establish that Mr. Di Ferrante is entitled to relief under § 362(d)(4).  Mr. Di Ferrante cannot prove a claim for common law fraud because he never relied on any actions taken under the alleged scheme.

---

[3] In Texas, all foreclosure sales take place on the first Tuesday of each  month.

Reliance is an element of common law fraud.  *In re Firstmerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

However, as set forth above, the purpose of the new § 362(d)(4) is to reduce abusive filings.  The plain language of § 362(d)(4) does not require that the creditor who brings the action have in fact relied on the debtor's deception or fraud.  Instead, § 362(d)(4) provides that the court shall grant relief from the stay  requested by "*a creditor*…if the court finds that the filing of the petition was part of a scheme to…defraud *creditors*…."   11 U.S.C. § 362(d)(4) (emphasis added).  Accordingly, reliance is not part of the statutory requirement.

Although the statute requires that deception or fraud be proven, the deception or fraud must only be part of the scheme.  In viewing the scheme as a whole, the Court is convinced that the scheme followed by Doris Young, as orchestrated by her daughter Donna Holcomb, has involved acts of deception that were intended to cause others (including courts) to accept as valid that which is invalid.

The conduct proven at the December 29, 2006 hearing includes the following:

1.    Two Story Enterprises, Inc. filed its second bankruptcy petition without retaining counsel.  The Court finds that filing to be a knowing violation of the prior ruling in Two Story Enterprises' first bankruptcy case and a deliberate attempt to secure the automatic stay by an unlawful filing.

2.    Mr. Young's bankruptcy schedules in his first case reflect that his marital status was "separated."   The case was a chapter 13 bankruptcy case.  The Youngs testified to this Court that they were never separated.  If they were separated, then Ms. Young's income would not be considered as part of the household income in the chapter 13 case, thus reducing the monthly payment.  The Court finds this statement to be a deception in order to secure an unfair gain.

3.    Doris Young, Donna Holcomb, Donald Young and Two Story Enterprises intentionally failed to comply with orders issued by the state court.  They used artifice as their excuse for non-compliance.  This was a deception deliberately practiced in order to secure an unfair gain.  Although the artifice failed, the Court finds that success of a fraud is not required to invoke the provisions of § 362(d)(4).

4.     In order to obtain the original loan on lot 26, Holcomb signed a false affidavit alleging that only Two Story Enterprises, Inc. was in possession of lot 26. Holcomb now wishes to have her parents allege that the property was a part of their homestead.  Either Holcomb's affidavit or her current testimony is false. Holcomb is a careful and knowledgeable person.  She did not sign the affidavit without considering its contents.  The Court concludes that the current testimony is false and is given to secure an unfair or unlawful gain.

5.     The Responses to Requests for Admission and Interrogatories filed by Doris Young, Two Story Enterprises and Donna Holcomb in the state court litigation show that the defendants—after reasonable inquiry—could neither admit nor deny requests for admission regarding statements made to them in connection with the original loan.  In order to pursue her claim that the property was part of their homestead, Ms. Young now takes the position that the responses were false.  The Court does not find that testimony to be credible.  Instead, the Court finds that Ms. Young has attempted to alter the facts to meet her current legal theory.

Taken as a whole, the Court concludes that the scheme organized against Mr. Di Ferrante included the use of deliberate deceptions practiced in order to secure unfair or unlawful gains.

**Multiple Bankruptcy Filings Affecting Such Real Property or Property Transfers**

As set forth in detail above, there have been six prior bankruptcy filings filed by related parties that affected lot 26.  Accordingly, the requirements of 11 U.S.C. § 362(d)(4) are satisfied. Because the requirements under § 362(d)(4)(A) and (B) are disjunctive, the Court reaches no conclusion with respect to whether the scheme involved the transfer of ownership of the real property.

**Conclusion Regarding § 362(d)(4)**

Under the totality of the circumstances, the Court concludes that (i) this case meets all of the technical requirements of § 362(d)(4); and (ii) the granting of § 362(d)(4) relief in this case furthers Congress' policy of curbing abusive bankruptcy filings.

## Adequate Protection

To avoid confusion, the Court separately addresses the effect of the provision of adequate protection by Ms. Young.

Section 362(d)(2) does not refer to adequate protection.  In general, adequate protection is applied for by motions filed under § 362(d)(1).  However, the introductory paragraph of § 362(a) provides that the Court "shall grant relief from the stay … such as by terminating, annulling, modifying, or *conditioning* such stay."  11 U.S.C. § 362(d) (emphasis added).   In determining the appropriate relief, the Court considered the offer of adequate protection in concluding that the stay should be *conditioned* rather than terminated.  Section 362 is intended to provide for flexible relief.  *See, e.g., In re Pittsford Polo Club, Inc.*, 188 B.R. 339, 344 (Bankr. W.D.N.Y. 1995).  Under § 362(d)(2), the stay need only be conditioned to assure the proper balance between the rights of creditors and debtors.  *See* COLLIER ON BANKRUPTCY ¶ 362.07[1], p. 362-84.16 (15th ed. rev. 2006).

At the conclusion of the hearing on December 29, 2006, the Court announced its decision.  Although the Court concluded that Ms. Young was entitled to provide adequate protection so that the § 362(d)(2) relief would be conditioned on the provision of adequate protection, the Court informed Ms. Young and her counsel that any adequate protection provided to support conditioning (rather than termination) of the stay under § 362(d)(2) would not be effective to extend the stay under § 362(c)(3) nor would it stay the effect of the Court's decision to terminate the stay under § 362(d)(4).  Thus, Ms. Young could lose her property despite any adequate protection offered under § 362(d)(2).  However, because of the possibility that both the § 362(c)(3) decision and the § 362(d)(4) decision could get reversed on appeal, the Court allowed Ms. Young to post adequate protection.  The Court cautioned Ms. Young that the

posting of the adequate protection did not appear to be prudent and that she could ill-afford to lose her funds if this Court's decision not to extend the stay were affirmed or if this Court's decision to terminate the stay under § 362(d)(4) were affirmed.  Nevertheless, no matter how unwise her decision, the source of the proposed adequate protection was purported to be non-estate property and the Court could not bar Ms. Young from using the resources of non-debtor family members to condition the stay.

With respect to a § 362(c)(3) motion, the Bankruptcy Code does not authorize the Court to extend the stay with conditions, unless the Court *first* determines that the bankruptcy case was filed in good faith as to the creditors to be stayed.  11 U.S.C. § 362(c)(3)(B).  This case was not filed in good faith.  The Court has no authority to extend the stay merely because of the provision of adequate protection.

With respect to § 362(d)(4), the Court declines to condition the stay.  The purpose of the new § 362(d)(4) is to reduce abusive filings.  *In re Muhaimin,* 343 B.R. at 166.  Inasmuch as the Court has determined that this case was filed as part of a scheme to hinder, delay and defraud Mr. Di Ferrante, it would be anomalous to use the Court's discretion to condition rather than terminate the stay.

**Orders Issued**

The Court has issued separate orders on December 29, 2006, and December 30, 2006. This Memorandum Opinion constitutes the findings and conclusions in support of those orders. To the extent of any inconsistency between these written findings and those oral findings and conclusions made on December 29, 2006, this Memorandum Opinion controls.

Signed at Houston, Texas, on January 10, 2007.

MARVIN ISGUR
United States Bankruptcy Judge